Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| Luna Residential III LLC Parte con Interés v. Amalia Cardona Fuster, Julio A. Ortiz Mcwilliams y la Sociedad de Gananciales Compuesta por ambos Recurridos v. Firstbank of Puerto Rico Peticionario | TA2025AP00466 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas Caso Núm. GV2023CV02254 Sobre: Cobro de Dinero - Ordinario |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de diciembre de 2025.

Comparece ante nos FirstBank Puerto Rico (Peticionario) mediante una Petición de *Certiorari* instado el 15 de octubre de 2025. En su recurso, nos solicita que revoquemos la Sentencia Parcial emitida por el Tribunal de Primera Instancia el 5 de septiembre de 2025, mediante el cual se declaró ¨No Ha Lugar¨ en parte la Moción de Sentencia Sumaria en torno a la ocurrencia o no de una sustitución, asunción de deuda o subrogación del deudor. Evaluado el escrito y toda vez que se recurre de una Sentencia Parcial, el 21 de octubre de 2025 acogimos el recurso como una Apelación y ordenamos a la secretaria a realizar el cambio de clasificación correspondiente.

Evaluada la totalidad de los escritos de las partes y en vista de que la parte peticionaria recurre de una determinación no dispositiva que fue atendida en la Sentencia Parcial, procedemos a atender el recurso de epígrafe como un *Certiorari.*

Por los fundamentos que expondremos a continuación denegamos el auto de *Certiorari*. Exponemos el trasfondo factico y procesal que acompaña la presente controversia.

I.

El 11 de julio de 2023, Luna Residential LLC presentó una Demanda de cobro de dinero en contra de Amalia Cardona Fuster y Julio A. Ortiz McWilliams y la Sociedad de Bienes Gananciales compuesta por ambos.[1] Adujo que el 15 de febrero de 2005, se otorgó un pagare a favor de Master Mortgage Corp. o a su orden por la suma principal de $168,300.00 más intereses.[2] Asimismo, expuso que son los actuales tenedores de buena fe del pagare,[3] objeto de la reclamación.[4] Por último, que la parte demandada ha incumplido con su obligación de pagar el principal.[5]

El 12 de septiembre de 2023, fueron diligenciados los emplazamientos a los Recurridos.[6] Además, el 21 de septiembre de 2023, se presentó una *Moción en solicitud de referido de mediación* para cumplir con el requisito jurisdiccional según lo establecido en Ley Núm. 184 – 2012, 32 LPRA sec. 2281 -2996.[7]

El 27 de octubre de 2023, los Recurridos presentaron su Contestación a Demanda.[8] En dicho escrito expusieron que Luna Residential LLC no es tenedor de buena fe del pagare.[9] Además, señalaron que ¨[l]a deuda hipotecaria debió haber sido saldada por lo menos desde el 7 de agosto de 2009, por lo que la parte demandada no ha incurrido en incumplimiento de la obligación de pagar el préstamo hipotecario. Además, el 20 de febrero de 2015

---

[1] Véase Ent. Sum. TPI Núm. 1.
[2] *Íd.*
[3] Véase Ent. Sum. TPI Núm. 5.
[4] Véase Ent. Sum. TPI Núm. 1.
[5] *Íd.*
[6] Véase Ent. Sum. TPI Núm. 7. Anejo I y II.
[7] *Íd.*
[8] Véase Ent. Sum. TPI Núm. 12.
[9] *Íd.*

FirstBank liberó a la parte demandada de la deuda que Luna pretende cobrar".[10]

Posteriormente, después de varios trámites procesales el 28 de mayo de 2024, los Recurridos presentaron Demanda contra terceros a Miguel Antonio Merced Torres y Yaidy N. Cruz Cotto (Sres. Merced – Cruz), Credit Management Consultant, Inc., (CMC) y FirstBank de Puerto Rico.[11] En su escrito expusieron que la propiedad fue adquirida por CMC, mediante una adjudicación en subasta pública por la cantidad de $10,000.00 el 21 de abril de 2006.[12] Por lo cual, según los Recurridos CMC se convirtió en deudor hipotecario hasta que saldara la deuda.[13] Además, señalaron que el 7 de agosto de 2009, se realizó una Escritura de Compraventa entre CMC y los Sres. Merced – Cruz.[14] En dicha escritura también se estableció que se retendría la cantidad $171,137.45 para saldar la hipoteca que gravaba la propiedad.[15] No obstante, la deuda hipotecaria no fue cancelada según la Escritura.[16] Por último, alegaron que FirstBank aceptó los pagos de los Sres. Merced – Cruz por un plazo de alrededor de tres (3) años.[17]

El 11 de julio de 2024, se diligenció el emplazamiento a FirstBank.[18] [19]

El 21 de agosto de 2024, el Peticionario presentó su Contestación a la Demanda contra tercero.[20] Adujo que CMC adquirió el inmueble en un subasta pública dado a que se llevó una causa de acción de cobro de dinero en contra de la Sra. Cardona

---

[10] *Íd.*, pág. 1.
[11] Véase Ent. Sum. TPI Núm. 48.
[12] *Íd.*
[13] *Íd.*
[14] *Íd.*
[15] *Íd.*
[16] *Íd.*
[17] *Íd.*
[18] Véase Ent. Sum. TPI Núm. 57.
[19] El 11 de septiembre de 2024, se emplazó personalmente a el Sr. Miguel A Mercedes Torres. En lo que respecta la Sra. Cruz Cotto y MCM, se emplazaron por edicto el 25 de septiembre de 2024. Véase Ent. Sum. TPI Núm. 83. A los terceros demandados también se les anoto la rebeldía. Véase Ent. Sum. TPI Núm. 87 y 88.
[20] Véase Ent. Sum. TPI Núm. 62.

Fuster y el cual constituía un gravamen en segundo rango y en primer rango Firstbank.[21] Asimismo, señalan que ¨niegan que [CMC] se convirtiera en deudor hipotecario hasta el saldo de la deuda, la novación por cambio de la persona del deudor solo puede darse con el consentimiento del acreedor¨.[22]

Luego de varios acontecimientos procesales, el 31 de enero de 2025, el Peticionario presentó una moción de sentencia sumaria.[23] En la antes mencionada moción se expusieron doce (12) hechos que no están en controversia según los promoventes. Asimismo, citan el caso de *S.L.G. Irizarry v. S.L.G. García, 155 DPR 713* (2001) en el cual señalan que ¨mediante la subrogación, no se extingue el vínculo obligacional entre el deudor original y su acreedor, sino que nace un nuevo vínculo entre el deudor y el *tercero* subrogado¨.[24] Por otro lado, el 24 de febrero de 2025 los Recurridos presentaron su *Moción en Oposición a Sentencia Sumaria.*[25] Destacamos que de la *Oposición a Sentencia Sumaria* no se controvirtió ninguno de los hechos.

El 7 de marzo de 2025, el Peticionario insto una *Réplica a Oposición a Moción de Sentencia Sumaria.*[26] En su escrito añadieron unos hechos adicionales que no están en controversia que giran en torno a que los Recurrentes tenían conocimiento de la perdida de la propiedad antes de la modificación con el banco. A su vez, el 7 de marzo de 2025, los Recurridos presentaron una *Réplica a Moción en Oposición a solicitud de sentencia sumaria y a desestimación de demanda por prescripción.*[27]

El 5 de septiembre de 2025, el Tribunal de Primera Instancia emitió una Sentencia Parcial en la cual declaró "No Ha Lugar" la

---

[21] *Íd.*
[22] *Íd.*, pág. 2.
[23] Véase Ent. Sum. TPI Núm. 95.
[24] *Íd.* pág. 10.
[25] Véase Ent. Sum. TPI Núm. 103.
[26] Véase Ent. Sum. TPI Núm. 105.
[27] Véase Ent. Sum. TPI Núm. 106.

Moción de Sentencia Sumaria presentada por los terceros demandados para los efectos de la ocurrencia o no, de una sustitución, asunción de deuda o subrogación del deudor¨. [28] Según el foro primario *motu proprio* (por sí mismo) encontró los siguientes hechos en controversia:

1. Previo a la ejecución de la subasta hubo o no, una sustitución de rango entre Credit Management Consultant Inc. y Firstbank.
2. En qué circunstancias vendió el bien Credit Managemenet Consultant Inc., a los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto.
3. Si Credit Management Consultant Inc., realizó el pagó de la hipoteca según se obliga en la Hipoteca número 65 de compraventa otorgada por Miguel Merced Torres y Yaidy Norah Cruz Cotto.
4. Si los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto realizaron los pagos del pagaré -en ese momento gravado por una hipoteca- en controversia directamente a FirstBank.
5. De haber realizo los pagos, ¿hasta que fecha realizaron esto los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto?
6. ¿Hubo algún requerimiento de pago por parte de FirstBank a los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto?
7. ¿Qué acciones tomó FirstBank con los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto? Si alguna...
8. Si FirstBank aceptó o no como acreedor en alguna circunstancia la sustitución de los deudores originales por los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto.
9. Si existe una reclamación de los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto en contra de Credit Management Consultant Inc. por incumplimiento de lo pactado en la Escritura número 65.
10. ¿Desde que fecha el préstamo estuvo en incumplimiento y vencido?
11. En que condiciones se le vendió el pagare a Luna Residential III LLC.
12. ¿Qué relación guarda PLanet Home Lending con Luna Residential III LLC?
13. Si existe un contrato de cesión de pagare que estipule las condiciones en las cuales fue cedido el pagaré.
14. Si el pagare fue vendido bajo la impresión de que estaba sujeto a un gravamen hipotecario.

El 22 de septiembre de 2025, el Peticionario solicitó una Reconsideración en torno a que se determine que no existió una sustitución del deudor y no hubo ni consentimiento expreso ni tácito

---

[28] Véase Ent. Sum. TPI Núm. 119., pág. 28.

del acreedor.[29] La Moción en cuestión fue declarada ¨No Ha Lugar¨ por el foro primario.[30]

Inconforme con esta determinación, el 15 de octubre de 2025, el Peticionario presentó una Petición de *Certiorari* en la cual realizó los siguientes señalamientos de errores:

> PRIMER ERROR: EL [TRIBUNAL DE PRIMERA INSTANCIA] ABUSÓ DE SU DISCRECIÓN Y ERRÓ AL NO RECONSIDERAR SU DETERMINACIÓN DE QUE EXISTE CONTROVERSIA SOBRE SI MIGUEL MERCED TORRES Y YAIDY NORAH CRUZ SOTO SUSTITUYERON COMO DEUDORES A LOS DEMANDADOS, U OCURRIÓ UNA ASUNCIÓN DE DEUDA CON LA ANUENCIA DE FIRSTBANK. (Negrillas omitidas).

> SEGUNDO ERROR: ERRÓ EL [TRIBUNAL DE PRIMERA INSTANCIA] AL CREAR CONTROVERSIAS INEXISTENTES MEDIANTE INFERENCIAS ESPECULATIVAS NO SUSTENTADAS POR LA PRUEBA DE RÉCORD, Y AL APLICAR INCORRECTAMENTE EL DERECHO APLICABLE EN CONTRAVENCIÓN CON LAS REGLAS DE PROCEDIMIENTO CIVIL Y A LA NORMA JURISPRUDENCIAL. (Negrillas omitidas).

Por su parte, el 21 de noviembre de 2025, la parte Recurrida presentó una Moción en cumplimiento de orden, en oposición a la conversión del recurso de *certiorari* a recurso de apelación y en oposición a la expedición de auto de *certiorari*.  Contando con la comparecencia de las partes, resolvemos.

II.

**A. Certiorari**

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López,* 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor

---

[29] Véase Ent. Sum. TPI Núm. 120.
[30] Véase Ent. Sum. TPI Núm. 121.

para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón v. Srio de Justicia*, 154 DPR 79, 91 (2001). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo, supra*, pág. 372 (citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016)).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el foro primario, solamente será expedido por este Tribunal cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. Ahora bien, por excepción este foro apelativo podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) casos que revistan interés público; (6) o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. En los casos antes mencionados, el foro apelativo no tiene que fundamentar su decisión al denegar la expedición de un recurso de *certiorari*.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso

de certiorari, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005) (citando a H. Sánchez Martínez,

*Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560). Por lo general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000) (citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986)). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

### B. Novación y Asunción de deudas

El Art. 1110 del Código Civil de 1930 establece que las obligaciones se extinguen por la novación. 31 LPRA sec. 3151. El tratadista español Castán Tobeñas define la novación como "la extinción de una obligación mediante la creación de una nueva destinada a reemplazarla".[31] J. Castan Tobeñas, *Derecho civil español, común y foral*, 13.ª ed. rev., Madrid, ed. Reus, 1992, T. III, pág. 483.

La Profa. Margarita Cárdenas citando a Medina de Lemus clasifican la novación en dos (2) categorías estas son la objetiva y la subjetiva. M. García Cárdenas, *El nuevo derecho de obligaciones y contratos: Código Civil de 2020*, 1ª ed. rev., San Juan, Ed. MJ Editores, 2021, pág. 271. La novación subjetiva es la que nos compete y es la que permite el cambio de deudor. Asimismo, el

---

[31] El Código Civil de 1930 no define la novación. No obstante, el Código Civil de 2020 brinda una definición concisa el cual establece que "la novación es la sustitución de una obligación por una nueva, la cual extingue la primera". 31 LPRA sec. 9421.

Código Civil de 1930 permite que se lleve a cabo una novación en su vertiente de modificación. Por lo cual, la obligación se podrá modificar sustituyendo a la persona que es deudora. 31 LPRA sec. 3241. No obstante, esta sustitución del deudor no se pude llevar a cabo sin el consentimiento del acreedor. 31 LPRA sec. 3243. Además, otra manera en que se emplea la novación subjetiva es a través de la figura de la asunción de deudas. García Cardenas, *op cit.*, pág. 271.

La asunción de deudas es una figura jurídica que no se encuentra codificado en nuestro derecho positivo ni aparece claro en la legislación histórica. J. R. Vélez Torres, Derecho de obligaciones, 2ª ed. rev., San Juan, Ed. Facultad de Derecho U.I.A., 1997, pág. 232. Si no que es un concepto adoptado jurisprudencialmente.

El Tribunal Supremo ha definido la asunción de deuda ¨como el contrato por el cual un tercero con asentimiento del acreedor toma a su cargo una obligación preexistente, se constituye en deudor, libera al deudor primitivo, y permanece invariable el resto de los elementos de la obligación¨. *Teachers Annuity v. Soc. de Gananciales*, 115 DPR 277, 289 (1984). Tanto la asunción de deudas como la novación requieren que exista consentimiento del acreedor. *Íd*. Para la novación el consentimiento tiene que ser uno expreso. Sin embargo, para la asunción de deudas el consentimiento puede ser uno tácito. *Íd.* En lo que respecta al consentimiento tácito el elemento fundamental es el comportamiento de la persona y no las palabras que utilice para expresarlo. *Íd.* Por último, nuestro máximo foro destacó en ¨. *Teachers Annuity v. Soc. de Gananciales* en torno al consentimiento tácito que:

> [E]s siempre una cuestión de intención, y como tal, requiere la consideración de todas las circunstancias del caso. Es por eso que advertimos que la aceptación de pago sin más, en las circunstancias de este caso, no

constituye un consentimiento tácito. *Por supuesto, una aceptación de pagos en circunstancias que revelen un patrón de conducta del cual pueda derivarse la intención de aceptar al nuevo deudor constituye, sin duda consentimiento tácito.* (Énfasis nuestro).

Por otro lado, nuestro máximo foro se expresó someramente en el caso de *SLG Irizarry v. SLG García*, 155 DPR 713 (2001) sobre la consecuencia cuando el acreedor no consciente la asunción de deudas. El Tribunal Supremo dispuso que, si no existe el consentimiento del acreedor, no se configura una asunción de deuda, sino una subrogación de un tercero. *Íd.* En este caso, la obligación original no se extingue, ya que le deudor inicial sigue vinculado al acreedor. *Íd.* El tercero subrogado asume una relación adicional, pero el deudor original continúa siendo responsable al acreedor por cualquier incumplimiento. *Íd.*

Por último, el profesor español Xabier Basozabal esboza mediante un análisis hermeneútico como debe aplicar la figura de la asunción de deudas cuando la obligación personal se encuentra en una persona distinta al que asumió la hipoteca. En específico señala que:

> Ahora bien, cuando la asunción de deuda acompaña la compraventa del bien con el que se garantiza aquélla (el comprador de finca hipotecada asume la deuda que se garantiza mediante hipoteca), otro criterio de interpretación propone que sea en adelante el comprador el único obligado pues de esta forma se evita que la relación obligatoria de deuda y la relación real de garantía se den entre personas distintas. Este cambio de canon hermeneútico <<a favor>> de la asunción de deuda liberatoria responde a que, en aquellos supuestos en los que existe un bien cuyo valor garantiza el pago de la deuda, el interés del acreedor está, no tanto en la identidad del titular de la garantía, como en la conservación de esta.[32]

### C. Sentencia Sumaria

Según el tratadista Hernández Colon una moción de sentencia sumaria "es aquella que solicita que se dicte sentencia a favor del

---

[32] Xabier Basozabal Arrue, *El contrato de asunción de deuda*, 2000, Boletín Oficial del Estado: Anuario de Derecho Civil, num.1. pág. 18.https://www.boe.es/biblioteca_juridica/anuarios_derecho/abrir_pdf.php?id= ANU-C-2000-10008300160 (última visita, 16 de diciembre de 2025).

promovente a base de prueba que a la moción se acompaña sin necesidad de que se celebre vista en su fondo porque en realidad no existe controversia real sobre ningún hecho material en el caso". R. Hernández Colon, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed. rev. San Juan, Ed. Lexis Nexis, 2017, pág. 313. La moción de sentencia sumaria solo va a proceder en aquellos casos en los cuales no existan *controversias reales y sustanciales* en cuanto a los *hechos materiales*, por lo que al juez solo le restara aplicar el derecho. Meléndez *González et al v. M. Cuebas*, 193 DPR 100, 109 (2015). (Énfasis suplido). El Tribunal Supremo de Puerto Rico ha establecido que "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Íd.*, pág. 110.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la moción de sentencia sumaria. La Regla 36.3 inciso (e) de dicha regla dispone que para emitir una determinación de forma sumaria será necesario que las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real y sustancial en cuanto a algún hecho esencial y como cuestión de derecho se dictara una sentencia favorable de la parte peticionaria. 32 LPRA Ap. V.

Por otro lado, la Regla 36.3 (b)(2) establece que la parte que conteste la moción de sentencia sumaria debe hacer referencia a los párrafos de los hechos esenciales y pertinentes que estén en controversia. 32 LPRA Ap. V. Asimismo, debe indicar las páginas de las declaraciones juradas u otra prueba en donde se establezcan los hechos que los respaldan. *Íd.* La controversia en cuanto a los hechos esenciales debe ser una real, por lo tanto, cualquier duda que surja no es suficiente para vencer la moción de sentencia sumaria. *Oriental Bank v. Perapi*, 192 DPR 7, 26 (2014).

Cuando se presente una moción de sentencia sumaria la parte promovida no puede descansar solamente en las declaraciones o negaciones de su alegación, si no que tiene el deber de contestar especifica y detalladamente como el promovente. 32 LPRA Ap. V., R. 36.3 (c).    De no actuar así, el tribunal dictara sentencia sumaria en su contra si procede. *Íd.* Por lo tanto, la parte que se opone a la moción de sentencia sumaria no puede cruzarse de brazos y descansar en sus planteamientos. *Oriental Bank v. Perapi, supra.,* pág. 27.    Si no que una vez se presente una controversia real y sustancial y este se oponga a la moción de sentencia sumaria tiene que presentar prueba al juez que lo convenza de resolver a su favor. *Íd.*

El Tribunal de Apelaciones se encuentra en la misma posición que el foro primario a la hora de revistar una solicitud de sentencia sumaria. *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004).    El Tribunal Supremo en el caso normativo de *Meléndez González et al v. M Cuebas, supra, *pág*., 119* estableció cual es el estándar que utilizara el Tribunal de Apelaciones si concede o niega una moción de sentencia sumaria. El estándar es el siguiente:

> Primero: (. . .) [E]l foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de sentencia Sumaria al foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumpla con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.
>
> Tercero, en el caso de revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio

tiene que cumplir con las exigencias de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuales hechos materiales encontró que están en controversia y cuales están incontrovertidos. Esta determinación se puede hacer en la sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia aplico correctamente el Derecho a la controversia. Íd.

III.

Luego de examinar detenidamente el expediente del presente caso, y conforme a la discreción que ostentamos para expedir un recurso de *certiorari* según los establece la Regla 40 del Reglamento del Tribunal de Apelaciones y la Regla 52. 1 de Procedimiento Civil, declinamos ejercer el recurso.

IV.

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones